UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIFEWAY FOODS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 6568 |
| | ) | |
| v. | ) | |
| | ) | Judge Kennelly |
| C&S WHOLESALE GROCERS, INC., | ) | |
| | ) | Magistrate Judge Mason |
| Defendant. | ) | |

## ANSWER

Defendant C&S Wholesale Grocers, Inc. ("C&S") answers the complaint of Plaintiff Lifeway Foods, Inc. ("Lifeway") as follows:

### The Parties

1. Plaintiff, Lifeway, is a publicly traded corporation organized and existing under the laws of the State of Illinois with its principle place of business located at 6143 West Oakton, Morton Grove, Cook County, Illinois.

ANSWER:  C&S admits the allegations of this paragraph.

2. Defendant, C&S, is a Delaware corporation, with its corporate headquarters located in Keene, New Hampshire.

ANSWER:  C&S admits that it has corporate headquarters in located in Keene, New Hampshire. C&S states that it is a Vermont corporation. C&S otherwise denies the allegations of this paragraph.

### Jurisdiction and Venue

3. This Court has jurisdiction under Section 2-209 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-209, as C&S transacts business in Illinois and C&S entered into a contract which is substantially connected with the state of Illinois.

ANSWER:  C&S denies that it entered into a contract with Lifeway.  As this case has been removed to federal court, C&S denies the allegations of this paragraph.  However, C&S admits that the U.S. District Court for the Northern District of Illinois has jurisdiction over this action.

4. Venue properly exists in this county pursuant to Section 2-101 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-101, as Cook County is where the transaction or some part thereof occurred out of which the cause of action arises.

ANSWER:  As this case has been removed to federal court, C&S denies the allegations of this paragraph.  However, C&S admits that the U.S. District Court for the Northern District of Illinois is a proper venue for this action.

**Common Facts**

5. Lifeway engages in the manufacture, sale and distribution of cultured, probiotic and functional food products in the health food industry.

ANSWER:  C&S admits the allegations of this paragraph.

6. Lifeway's main product is kefir, a milk-based drink with a considerable shelf-life ("Lifeway's kefir product").

ANSWER:  C&S admits that Lifeway sells kefir.  C&S is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and therefore denies them.

7. C&S is a wholesale food distribution company which distributes food products to supermarkets, retail stores and military bases, serving over 5,000 stores via warehouses in Vermont, Massachusetts, Connecticut, New York, New Jersey, Pennsylvania, Maryland, Ohio, California, Hawaii, Alabama, South Carolina and Tennessee.

ANSWER:  C&S admits the allegations of this paragraph.

8. Upon information and belief, C&S has an exclusive relationship with its customers, including A&P Food Mart and Pathmark. Pursuant to this exclusive relationship, if a company wants to sell food products with C&S' customers they have to contract with C&S for purchase and delivery of such product.

ANSWER: C&S denies the allegations of this paragraph.

9. In or around January 2006, Lifeway, desiring to enter into the New England public grocery market, entered into an oral agreement with C&S pursuant to which Lifeway agreed to sell and ship its kefir products to C&S and C&S agreed to place purchase orders for Lifeway's kefir products for its customers and upon delivery of Lifeway's kefir products timely distribute Lifeway's kefir products to its customers and pay Lifeway in accordance with the terms of Lifeway's invoices (the "Contract").

ANSWER: C&S denies the allegations of this paragraph.

10. As part of the Contract and at C&S' demand, Lifeway also agreed to pay a $50,000 slotting fee to Pathmark for shelf space for five of its kefir product at Pathmark's stores for one year and in exchange for which, C&S represented that Pathmark would place with C&S orders for orders of Lifeway's kefir products for which C&S would pay Lifeway according to the terms of Lifeway's invoices.

ANSWER: C&S denies the allegations of this paragraph.

11. On May 24, 2006, C&S unilaterally deducted the full $50,000 slotting fee from the amount C&S owed to Lifeway on Lifeway's invoice.

ANSWER: C&S admits that its July 24, 2006 check cover sheet report reflects that C&S deducted a $50,000 slotting fee, listed as a "Pathmark deduction." C&S otherwise denies the allegations of this paragraph.

12. Lifeway never agreed to allow C&S to deduct the sum of $50,00.00 from amounts owed to Lifeway by C&S.

ANSWER: C&S denies the allegations of this paragraph.

13. From January 2006 through January 2007, C&S, purportedly on behalf of its customers, placed purchase orders for kefir products with Lifeway.

ANSWER:  C&S admits that at the request of certain of its customers, C&S ordered products from Lifeway during the specified time period.  C&S otherwise denies the allegations of this paragraph.

14. From January 2006 through January 2007, Lifeway timely processed C&S' orders and timely shipped its kefir products to C&S.

ANSWER:  C&S denies that all of the product that it received from Lifeway was timely processed and shipped, and C&S therefore denies the allegations of this paragraph.

15. C&S timely received Lifeway's kefir products in good condition and merchantable condition.

ANSWER:  C&S denies that all of the product that it received from Lifeway was in good and merchantable condition, and C&S therefore denies the allegations of this paragraph.

16. Lifeway sent weekly invoices to C&S with the number of items and pallets being shipped. C&S received each of Lifeway's invoices which expressly state "No deduction can be made from the invoice." A true and accurate copy of a Lifeway invoice is attached hereto as <u>Exhibit A</u> and incorporated herein.

ANSWER:  C&S admits that Exhibit A is a single invoice dated 8/8/06 that Lifeway apparently sent to C&S, and which C&S presumes that it received from Lifeway.  C&S admits that Lifeway correctly quoted a portion of the language that appears on this invoice.  C&S otherwise denies the allegations of this paragraph.

17. When C&S received Lifeway's invoices, instead of paying the invoice according to their terms, C&S, without contacting Lifeway to dispute any of the charges, unilaterally claimed past credits by deducting credit amounts from its payments to Lifeway for other purchases.

ANSWER:  C&S denies the allegations of this paragraph.

18. C&S then issued checks to Lifeway in the reduced amount and sent a facsimile with a check cover sheet report reflecting the credits C&S claimed.

ANSWER:  C&S admits that it sent checks to Lifeway and sent faxed documentation listing any return or processing costs.  C&S otherwise denies the allegations of this paragraph.

19. The facsimiles from C&S also reflect that C&S without any explanation unilaterally sent many of Lifeway's kefir products to C&S' reclamation facility.

ANSWER:  C&S denies the allegations of this paragraph.

20. In conjunction with sending many of Lifeway's kefir products to C&S' reclamation facility, C&S also unexplainably charged various return and processing fees.

ANSWER:  C&S admits that it sent Lifeway faxed documentation listing any return or processing costs.  C&S otherwise denies the allegations of this paragraph.

21. Each facsimile C&S sent to Lifeway also included a March 21, 2004 letter explaining the dispute resolution process which C&S stated would take approximately four to eight weeks to resolve.

ANSWER:  C&S admits that it sent Lifeway faxed documentation that included a March 22, 2004 letter that, among other things, explained the deduction resolution dispute process and stated that this resolution takes approximately 4-8 weeks.  C&S otherwise denies the allegations of this paragraph.

22. C&S continued unilaterally taking these credits, return/processing fees and reclamation deductions out of the payments it made to Lifeway.

ANSWER:  C&S admits that it sent checks to Lifeway and sent faxed documentation listing any return or processing costs.  C&S otherwise denies the allegations of this paragraph.

23. By way of example, on March 21, 2006, Lifeway received four facsimiles from C&S with the same March 22, 2004 (a date two years earlier than when the facsimile was sent) letter and four check cover sheet reports reflecting that C&S unilaterally sent $179.37 worth of Lifeway's product to C&S' reclamation facility, charged Lifeway $35.46 in return/processing costs and took credits some of which were not identified and others of which were vaguely designated as "out of code damaged" from January 28, 2006, February 4, 2006 and February 25, 2006 and a $150 "multiple items on one pallet" credit. True and accurate copies of the March 21, 2006 facsimiles are attached hereto as <u>Exhibit B</u> and incorporated herein.

<u>ANSWER</u>:  C&S admits that it sent to Lifeway the facsimiles discussed in this paragraph.  C&S denies Lifeway's characterization of these documents and the events they involve and therefore denies the allegations of this paragraph.

24. On April 3, 2006, Lifeway received a facsimile from C&S with the same March 22, 2004 letter and a check cover sheet report reflecting that C&S unilaterally sent $132.48 worth of Lifeway's product to C&S' reclamation facility, charged Lifeway $25.85 in return/processing costs, and took an unidentified credit for $158.34. A true and accurate copy of the April 3, 2006 facsimile is attached hereto as <u>Exhibit C</u> and incorporated herein.

<u>ANSWER</u>:  C&S admits that it sent to Lifeway the facsimile discussed in this paragraph.  C&S denies Lifeway's characterization of these documents and the events they involve and therefore denies the allegations of this paragraph.

25. On April 11, 2006, Lifeway received three facsimiles from C&S with the same March 22, 2004 letter and check cover sheet reports reflecting that C&S unilaterally sent $92.94 worth of Lifeway's product to C&S' reclamation facility, unilaterally charged Lifeway $18.11 in return/processing costs, and unilaterally took two unidentified credits in the amount of $111.08. True and accurate copies of the April 11, 2006 facsimiles are attached hereto as <u>Exhibit D</u> and incorporated herein.

<u>ANSWER</u>:  C&S admits that it sent to Lifeway the facsimiles discussed in this paragraph.  C&S denies Lifeway's characterization of these documents and the events they involve and therefore denies the allegations of this paragraph.

26. On July 24, 2006, Lifeway received eight facsimiles from C&S with the same March 22, 2004 letter and eight separate check cover sheet reports reflecting that collectively C&S unilaterally sent $3,955.54 worth of Lifeway's product to C&S' reclamation facility, unilaterally charged Lifeway $781.58 in return/processing costs, and unilaterally took deductions many of which were completely unidentified and others of which were vaguely designated as "pricing difference," "quantity difference," "out of code damaged 6/10/06," "out of code damaged 5-15-06," a $200 "C and S service fee," "out of code damaged 6/24/06," "out of code damaged 5-20-06" and two $150 "multiple items on one pallet." True and accurate copies of the July 24, 2006 facsimiles are attached hereto as <u>Exhibit E</u> and incorporated herein.

ANSWER:  C&S admits that it sent to Lifeway the facsimiles discussed in this paragraph.  C&S denies Lifeway's characterization of these documents and the events they involve and therefore denies the allegations of this paragraph.

27. The July 24, 2006 check cover sheet report also reflects that C&S deducted the full $50,000 slotting fee, designated as a $50,000 "Pathmark deduction."  <u>Exhibit F</u>.

ANSWER:  C&S admits the allegations of this paragraph.

28. On July 27, 2006, Lifeway received a facsimile from C&S reflecting that C&S unilaterally sent $565.66 worth of Lifeway's product to C&S' reclamation facility, charged Lifeway 111.16 in return/processing costs and took several unidentified credits and other credits vaguely designated as "out of code damaged" from July 1, 2006 and $150 "multiple items on one pallet" credit.  A true and accurate copy of the July 27, 2006 facsimile is attached hereto as <u>Exhibit G</u> and incorporated herein.

ANSWER:  C&S admits that it sent to Lifeway the facsimile discussed in this paragraph.  C&S denies Lifeway's characterization of these documents and the events they involve and therefore denies the allegations of this paragraph.

29. On July 31, 2006, Lifeway, received a facsimile from C&S with the same March 22, 2004 letter and a check cover sheet report reflecting that C&S unilaterally took credit vaguely designated by C&S as a "pricing difference."  A true and accurate copy of the July 31, 2006 facsimile is attached hereto as <u>Exhibit H</u> and incorporated herein.

ANSWER:  C&S admits that it sent to Lifeway the facsimile discussed in this paragraph.  C&S denies Lifeway's characterization of these documents and the events they involve and therefore denies the allegations of this paragraph.

   30. On August 4, 2006, Lifeway received two facsimiles from C&S with the same March 22, 2004 letter and check cover sheet reports reflecting that C&S unilaterally sent $2,264,67 worth of Lifeway's product to C&S' reclamation facility and charged Lifeway $463.95 in return/processing costs. True and accurate copies of the August 4, 2006 facsimiles are attached hereto as Exhibit I and incorporated herein.

ANSWER:  C&S admits that it sent to Lifeway the facsimiles discussed in this paragraph.  C&S denies Lifeway's characterization of these documents and the events they involve and therefore denies the allegations of this paragraph.

   31. On August 14, 2006, Lifeway received a facsimile from C&S with the same March 22, 2004 letter and a check cover sheet report reflecting that C&S unilaterally sent $386.41 worth of Lifeway's product to C&S' reclamation facility, charged Lifeway $87.22 in return/processing costs and took credits many of which were unidentified and others of which were vaguely designated as "out of code damaged" from June 24, 2006 and July 15, 2006. A true and accurate copy of the August 14, 2006 facsimile is attached hereto as Exhibit J and incorporated herein.

ANSWER:  C&S admits that it sent to Lifeway the facsimile discussed in this paragraph.  C&S denies Lifeway's characterization of these documents and the events they involve and therefore denies the allegations of this paragraph.

   32. On August 28, 2006, Lifeway received three facsimiles from C&S with the same March 22, 2004 letter and a check cover sheet report reflecting that C&S unilaterally sent $1,982.72 worth of Lifeway's product to C&S' reclamation facility, charged Lifeway $435.01 in return/processing costs and unilaterally took credits many of which were unidentified and others of which were vaguely designated as "out of code damaged" from July 2006, "quantity difference" and "sales to WB/A&P". True and accurate copies of the August 28, 2006 facsimiles are attached hereto as Exhibit K and incorporated herein.

ANSWER:  C&S admits that it sent to Lifeway the facsimiles discussed in this paragraph.  C&S denies Lifeway's characterization of these documents and the events they involve and therefore denies the allegations of this paragraph.

33. On September 11, 2006, Lifeway received three facsimiles from C&S with the same March 22, 2004 letter and a check cover sheet report reflecting that C&S unilaterally sent $803.30 worth of Lifeway's product to C&S' reclamation facility, charged Lifeway $230.28 in return/processing costs and unilaterally took credits many of which were unidentified and others of which were vaguely designated as "out of code damaged" from August 2006. True and accurate copies of the September 11, 2006 facsimiles are attached hereto as Exhibit L and incorporated herein.

ANSWER:  C&S admits that it sent to Lifeway the facsimiles discussed in this paragraph.  C&S denies Lifeway's characterization of these documents and the events they involve and therefore denies the allegations of this paragraph.

34. On September 19, 2006, Lifeway received three facsimiles from C&S with the same March 22, 2004 letter and a check cover sheet report reflecting that C&S unilaterally sent $2,890.16 worth of Lifeway's product to C&S' reclamation facility, charged Lifeway $612.96 in return/processing costs and unilaterally took credits many of which were unidentified and others of which were vaguely designated as "out of code damaged" from August 19, 2006, "multiple items on one pallet," and "pallet charges." True and accurate copies of the September 19, 2006 facsimiles are attached hereto as Exhibit M and incorporated herein.

ANSWER:  C&S admits that it sent to Lifeway the facsimiles discussed in this paragraph.  C&S denies Lifeway's characterization of these documents and the events they involve and therefore denies the allegations of this paragraph.

35. On September 26, 2006, Lifeway received two facsimiles from C&S with the same March 22, 2004 letter and a check cover sheet report reflecting that C&S unilaterally sent $1,901.63 worth of Lifeway's product to C&S' reclamation facility, charged Lifeway $480.94 in return/processing costs and unilaterally took credits many of which were unidentified and others of which were vaguely designated as "out of code damaged" from August 26, 2006. True and accurate copies of the September 26, 2006 facsimiles are attached hereto as Exhibit N and incorporated herein.

ANSWER:  C&S admits that it sent to Lifeway the facsimiles discussed in this paragraph.  C&S denies Lifeway's characterization of these documents and the events they involve and therefore denies the allegations of this paragraph.

36. On or around September 2006 and unbeknownst to Lifeway, A&P stopped ordering Lifeway's kefir product but C&S, with knowledge that A&P had discontinued ordering Lifeway's kefir product, continued placing orders with Lifeway for A&P. It was not until February 2007, Lifeway finally discovered A&P had stopped ordering Lifeway's product back in September 2006.

ANSWER:  C&S denies the allegations of this paragraph.

37. On October 3, 2006, Lifeway received two final facsimiles from C&S with the same March 22, 2004 letter and a check cover sheet report reflecting that C&S unilaterally sent $4,136.87 worth of Lifeway's product to C&S' reclamation facility, charged Lifeway $1,151.81 in return/processing costs and unilaterally took credits many of which were unidentified and others of which were vaguely designated as "out of code damaged" from September 2006 and "improper block or tier." True and accurate copies of the October 3, 2006 facsimiles are attached hereto as <u>Exhibit O</u> and incorporated herein.

ANSWER:  C&S admits that it sent to Lifeway the facsimiles discussed in this paragraph.  C&S denies Lifeway's characterization of these documents and the events they involve and therefore denies the allegations of this paragraph.

38. Many of C&S' weekly reclamation notices reflected the <u>entire</u> shipment of Lifeway's kefir product to C&S had been sent to C&S' reclamation facility.

ANSWER:  C&S denies the allegations of this paragraph.

39. Upon information and belief, C&S placed purchase orders for kefir products with Lifeway even though C&S' customers had not ordered any kefir products. Then, upon delivery of Lifeway's kefir products to C&S' warehouse, C&S never distributed the kefir products to its own customers. After Lifeway's kefir products passed their expiration date, C&S then sent the products to its reclamation facility.

ANSWER:  C&S denies the allegations of this paragraph.

40. Upon information and belief, C&S engaged in this scheme so that C&S could charge Lifeway for the product through improper credits.

ANSWER:  C&S denies the allegations of this paragraph.

41. On or around September 2006, Pathmark, unbeknownst to Lifeway, stopped ordering Lifeway's kefir product from C&S.

ANSWER:  C&S denies the allegations of this paragraph.

42. Yet, with full knowledge that Pathmark had discontinued placing orders for Lifeway's kefir product, C&S continued placing orders with Lifeway purportedly on behalf of Pathmark.

ANSWER:  C&S denies the allegations of this paragraph.

43. In February 2007, when Lifeway discovered Pathmark had discontinued placing orders for Lifeway's kefir back in September 2006, Lifeway immediately demanded C&S repay the $50,000 slotting fee.

ANSWER:  C&S denies the allegations of this paragraph.

44. C&S failed and refused to repay Lifeway any portion of the $50,000 slotting fee.

ANSWER:  C&S admits that it refuses to repay Lifeway for the $50,000 slotting fee payable to Pathmark, and states that it has no obligation to do so.  C&S otherwise denies the allegations of this paragraph.

45. Lifeway further demanded C&S pay the outstanding sums due on the invoices.

ANSWER:  C&S admits that in this action, Lifeway has demanded money from C&S.  Because Lifeway has not sufficiently explained the basis for its alleged damages, and attached only a single invoice to the complaint, C&S denies the allegations of this paragraph.

46. C&S failed and refused to pay any sums due and owing on the invoices.

ANSWER: C&S admits that it refuses to pay Lifeway the amounts demanded in this action, and states that it has no obligation to do so. C&S otherwise denies the allegations of this paragraph.

47. Lifeway reasonably expected to be doing business in the New England market for at least one year. However, since Lifeway was caused to stop doing business with C&S, Lifeway has been forced out of the majority of the New England market.

ANSWER: As to the first sentence, C&S is without knowledge or information sufficient to form a belief as to the truth of the allegations in this sentence and therefore denies them. C&S denies the remaining allegations of this paragraph.

## COUNT I
### (Breach of Contract)

48. Lifeway repeats and alleges Paragraphs 1 through 47 as if fully plead herein.

ANSWER: C&S incorporates by reference its answers to those paragraphs.

49. Lifeway performed each and every obligation required of it pursuant to the terms of its Contract with C&S.

ANSWER: C&S denies the allegations of this paragraph.

50. C&S breached the Contract in one or more of the following ways:

   a. By placing purchase orders for kefir products with Lifeway even though C&S' customers had not ordered any kefir products;

   b. By failing to timely distribute Lifeway's kefir products to its customers upon Lifeway's delivery of kefir products to C&S' warehouses;

   c. By unilaterally, without explanation, sending Lifeway's kefir products to a C&S reclamation facility;

   d. By charging unreasonable return and processing fees for unilaterally sending Lifeway's kefir products to C&S reclamation facility;

   e. By taking unexplainable credits and deductions for Lifeway kefir products sold and delivered to C&S between January 2006 and January 2007;

  f. By failing to pay Lifeway in accordance with the terms of Lifeway's invoices; and

  g. For failing to repay the $50,000 slotting fee for shelf space at Pathmark.

ANSWER: C&S denies the allegations of this paragraph.

  51. Lifeway has demanded that C&S pay the monies to which it is due and owing.

ANSWER: C&S admits that it refuses to pay Lifeway the amounts demanded in this action, and states that it has no obligation to do so. C&S otherwise denies the allegations of this paragraph.

  52. C&S, notwithstanding such demand, has failed and refused to pay Lifeway the amount due and owing.

ANSWER: C&S admits that it refuses to pay Lifeway the amounts demanded in this action, and states that it has no obligation to do so. C&S otherwise denies the allegations of this paragraph.

  53. As a direct and proximate result of C&S' failure to comply with the terms of its agreement with Lifeway, Lifeway has been damaged in the sum of $86,768.22 for unpaid invoices, credits, deductions, service fees and reclamations costs plus $50,000 for the slotting fee plus lost profits which were reasonably contemplated at the time the Contract was entered into and interest.
ANSWER: C&S denies the allegations of this paragraph.

  54. 815 ILCS 205/2 provides that creditors shall be allowed to receive interest at the rate of five percent (5%) per annum for money after they become due when withheld by unreasonable and vexatious delay of payment.

ANSWER: C&S admits the allegations of this paragraph.

  55. C&S' failure to pay Lifeway all sums due and owing is unreasonable and vexatious.

ANSWER: C&S denies the allegations of this paragraph.

WHEREFORE, C&S respectfully asks this Court to enter judgment on Count I in its favor and against Lifeway; to award C&S its costs of suit; and to grant C&S any further relief that the Court deems just and proper.

## COUNT II
### (In the Alternative, *Quantum Meruit*)

56. Lifeway repeats and alleges Paragraphs 1 through 8 and Paragraphs 13 through 15 as though fully plead herein.

ANSWER:  C&S incorporates by reference its answers to those paragraphs.

57. Lifeway provided kefir products at the specific request of C&S for the time period of January 2006 through January 2007.

ANSWER:  C&S denies the allegations of this paragraph.

58. Lifeway paid C&S and/or Pathmark a $50,000 slotting fee at C&S' specific request.

ANSWER:  C&S denies the allegations of this paragraph.

59. C&S accepted Lifeway's kefir products and the $50,000 slotting fee.

ANSWER:  C&S denies the allegations of this paragraph.

60. C&S received the benefit of Lifeway's kefir products and slotting fee.

ANSWER:  C&S denies the allegations of this paragraph.

61. C&S knew that Lifeway provided kefir products for C&S with the expectation of being paid for its product.

ANSWER:  C&S denies the allegations of this paragraph.

62. C&S knew that Lifeway paid the $50,000 slotting fee to C&S through C&S' unilateral deduction of the sum of $50,000 from Lifeway's invoices with the expectation that C&S would place and pay for orders from Pathmark for five of Lifeway's kefir products for at least one year.

ANSWER: C&S denies the allegations of this paragraph.

63. Lifeway's kefir products have a fair value of $86,768.22.

ANSWER: C&S denies the allegations of this paragraph.

64. As a direct and proximate result of C&S' failure to pay Lifeway for the kefir products, Lifeway has suffered a loss in the sum of $86,768.22.

ANSWER: C&S denies the allegations of this paragraph.

65. As a direct and proximate result of C&S' failure to repay Lifeway the $50,000 slotting fee, Lifeway has suffered a loss in the sum of $50,000.

ANSWER: C&S denies the allegations of this paragraph.

66. C&S received and retained a benefit from the deduction of the $50,000 slotting fee as well as the shipment by Lifeway to C&S of Lifeway's kefir products.

ANSWER: C&S denies the allegations of this paragraph.

67. It would be inequitable, unjust and unfair for C&S to retain the benefit of Lifeway's kefir products and slotting fee without paying the fair value thereof.

ANSWER: C&S denies the allegations of this paragraph.

WHEREFORE, C&S respectfully asks this Court to enter judgment on Count II in its favor and against Lifeway; to award C&S its costs of suit; and to grant C&S any further relief that the Court deems just and proper.

## COUNT III
## (In the Alternative, Unjust Enrichment)

68. Lifeway repeats and alleges Paragraphs 1 through 8 and Paragraphs 13 through 15 as though fully plead herein.

ANSWER:　C&S incorporates by reference its answers to those paragraphs.

69. C&S received the fair and reasonable value of Lifeway's kefir products described herein and the slotting fee.

ANSWER:　C&S denies the allegations of this paragraph.

70. The fair and reasonable value of Lifeway's kefir products and the slotting fee is $136,768.22.

ANSWER:　C&S denies the allegations of this paragraph.

71. C&S has unjustly retained the benefit of Lifeway's kefir products and slotting fee to Lifeway's detriment.

ANSWER:　C&S denies the allegations of this paragraph.

72. C&S' retention of this benefit violates the fundamental principles of justice, equity, and good conscience.

ANSWER:　C&S denies the allegations of this paragraph.

WHEREFORE, C&S respectfully asks this Court to enter judgment on Count III in its favor and against Lifeway; to award C&S its costs of suit; and to grant C&S any further relief that the Court deems just and proper.

Respectfully submitted,

C&S WHOLESALE GROCERS, INC.


By /s Jay R. Hoffman
   Its Attorney

Jay R. Hoffman  (No. 6193213)
Suite 1800
303 West Madison Street
Chicago, IL 60606
(312) 899-0899
jay@hoffmanlegal.com

17